George A. Dailey, Appellee, v. Nellie Manuel (Thompson), Appellant.

CONTRACTS—*fraudulent*. In this action of *assumpsit* for breach of contract for the sale of land, the defense of alleged fraud *held* not proved.

Appeal from the Circuit Court of Pike county; the HON. HARRY HIGBEE, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

ANDERSON & MATTHEWS, for appellant.

WILLIAM MUMFORD, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action of *assumpsit* for an alleged breach of a contract for the sale of certain real estate, situated in the Village of Hull, in Pike County, brought in the circuit court of that county, by the appellee against the appellant.

The declaration contains one count for breach of the following contract:

"SPRINGFIELD, Ill., Aug. 5, 1911.

"This is to certify that I have this day sold to C. A. Dailey my place located in the village of Hull, Ill., for $425, four hundred and 25 dollars, and have this day received $10 dollars, on same, balance due in ten days, just as soon as deed is made out.

(Signed) NELLIE MANUEL.

As witnesses:

EDWARD POTTER,
L. J. MANUEL."

In addition to the special count, the common counts were set out in the declaration, to which a plea of the general issue was filed. The jury was waived by the parties and the cause heard by the court. Judgment was entered against the appellant, in favor of appellee, and the record is brought before us by appeal.

The principal question presented by appellant as ground for reversal is, that the contract between the

appellant and appellee was fraudulent, against public policy and against the laws of this state, and that the breach of such a contract, procured under such circumstances, does not give rise to a cause of action in a court of law, and the appellant rests her whole defense upon the applicability of the doctrine thus announced to the facts in this case.

The uncontradicted facts appearing in the record are as follows: Appellant was the owner of the property involved in this suit, and desired to dispose of the same, and, after some conversation with appellee, appellant entered into the contract, in writing, as set forth in the declaration, and received at the time the payment of ten dollars as recited therein; that appellant afterward found a purchaser who would pay more for the property than the price stipulated in the contract with appellee, and went to appellee and sought to have him release her from her contract; that upon his refusal so to do she refused to make a conveyance to him, but sold and conveyed the property to the Mississippi River Power Company, for the sum of six hundred dollars.

It is true, as shown by the record in this case, that a Mr. Fletcher had some telegraphic communication with appellant regarding the purchase of her property before the making of the contract in question; and it is also true that appellee had notice of such negotiations. But the evidence clearly discloses that appellee, before entering into the contract, was informed by appellant that she had not sold the premises in question. After receiving this information from appellant, appellee proceeded with his negotiations and closed the contract in question. Subsequent developments show, upon the trial of the cause, that Mr. Fletcher abandoned his contention of a legal contract with appellant. We here quote the evidence of Mr. Fletcher from the record, as follows:

"Q. You didn't insist Mrs. Manuel keep this telegram arrangement with you, did you?

"A. I considered it useless and let the Power Company take it up.

"Q. Just abandoned it?

"A. After she would not accept there was nothing for me to do.

"Q. After she came to Hull, you simply abandoned the whole thing and let the Power Company take it up?

"A. All I could do."

It further appeared from the evidence that Mr. Fletcher was acting for the Mississippi River Power Company. In support of this we quote from the abstract of the evidence of Mr. Lease, as follows:

"They asked me to buy the Nellie Manuel property. They wanted to know what it could be bought at. They told me to buy it anywhere to $500. They would pay $1 down on contract. I told them that would not go with her. She had to have money if she sold. I made arrangements that I would pay her and take the deed and hold it until they had money there to pay with; then I went to Charles Fletcher, my son-in-law, the operator, and I told him I wanted to buy this property and have the deed made to him until the Power Company was ready to pay. I went to Mr. Fletcher and instructed him to buy it and told him I would pay for it. I was acting for the Mississippi River Power Company. I did not have any conversation with Mr. Daily after I talked with Mr. Fletcher in regard to it."

We think the evidence clearly shows the appellee was acting in good faith in the procurement of the contract. It seems to have been a race or contest between the appellee and the agents of the Mississippi River Power Company to see who could buy the property first.

The action of the court in passing upon the propositions of law was consistent, when viewed from the standpoint of the facts in this case.

Finding no reversible error in this record, and believing that the judgment is supported by the evidence, it is, therefore, affirmed.

*Affirmed.*